UNITED  STATES  DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-168 (JWB/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255** |
| v. | |
| MONTEZ TERRIEL LEE, JR., | |
| Defendant. | |

Defendant Montez Terriel Lee, Jr., ("Mr. Lee") by and through the undersigned attorney, respectfully submits the following reply to the Government's Response in Opposition to Mr. Lee's motion to vacate his sentence. Doc. No. 126. The response raises a factual dispute, claiming that Mr. Lee was aware that his attorney intended to concede the sentence enhancement because Mr. Lee expressed remorse to the decedent's family during his allocution. The Government also argues that Mr. Lee's trial attorney Mr. Rivers had the authority to decide whether or not to contest the enhancement and therefore that he could not have been ineffective for making a strategic decision, regardless of whether or not he had Mr. Lee's consent.

Agreeing to a sentence enhancement while in possession of multiple corroborating forms of exculpatory evidence was ineffective assistance of counsel, regardless of whether Mr. Rivers had the legal authority to make such a stipulation and regardless of Mr. Lee's awareness or involvement in the decision. Mr. Lee's compassion towards the

1

decedent's family does not render Mr. Rivers' performance at sentencing any less ineffective.

I. **Conceding a sentence enhancement that clearly lacks evidentiary support is ineffective and prejudicial, regardless of whether Mr. Lee directed the stipulation.**

Defendant agrees with the Government that the relevant standard here is the two-pronged *Strickland* test: a petitioner bringing claims of ineffective assistance of counsel pursuant to 28 U.S.C. § 2255 must demonstrate: "(1) [the] attorney's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for that deficient performance, the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Mr. Rivers' stipulation to a sentence enhancement lacking in evidentiary support satisfies the requirements of this test. A reasonable lawyer with the information available to Mr. Rivers at the time of the decision would not have withdrawn a well-supported objection to an enhancement that approximately quadrupled his client's exposure, for zero negotiated benefit in return. The application of the sentence enhancement clearly had a substantial impact on the outcome of the case.

A. **A reasonable attorney in Mr. Rivers' position would have contested the sentence enhancement using the abundant evidence at his disposal.**

Whether a trial attorney's conduct amounts to ineffective assistance of counsel depends on whether counsel provided "reasonably effective assistance," evaluated from the "facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 688, 690.

Ineffective-assistance cases require the petitioner to overcome the presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This can be done by showing that the challenged act or omission was not based on strategic reasoning, even if that strategic reasoning was in hindsight flawed, but instead on neglect, mistake, or error. *Marcrum v. Luebbers*, 509 F.3d 489, 502-03 (8th Cir. 2007).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. *See also Marcrum*, 509 F.3d at 502 (evaluating "whether counsel functioned to assure adversarial testing of the state's case.") Here, the defense counsel was the opposite of adversarial, in fact *preventing* adversarial testing of the state's case and acting more in the interests of the Government than of his own client. Notably, the Government does not assert in its brief that the challenge to the sentence enhancement would have failed in court.

No reasonable attorney would have ignored the multiple corroborating forms of evidence that the decedent was not in the building until long after the arson, and instead agreed to a sentence enhancement that added almost fifteen years to the defendant's maximum guideline sentence. Nothing could undermine the adversarial process more than a trial attorney agreeing with the Government's position for no discernible reason other than perhaps not wanting to bother even with introducing evidence already in his possession.

A trial attorney's omission is deemed ineffective when based not on at least some strategic reasoning, but on mistake or failure. *C.f. Kimmelman v. Morrison*, 477 U.S. 365 (1986) (finding ineffective assistance because of counsel's failure to file a motion to suppress key evidence due to attorney oversight) and *Sherron v. Norris*, 69 F. 3d 285, 290 (8th Cir. 1995) (introducing a report without eliciting live testimony was a "reasoned choice of trial strategy," and therefore not a "constitutionally deficient performance" because the witness was notoriously hostile towards defendants).

Here, Mr. Rivers' failure to challenge the sentence enhancement was for no reason at all, let alone a strategic one. The Government speculates that agreeing to the sentence enhancement was part of a "leniency strategy," and that evidence about the decedent would "not adhere to Lee's benefit at the sentencing hearing." Doc. 126 at 13.

There is no evidence that Mr. Rivers made any such calculation. Trial counsel's strategic reasoning cannot be identified through the government retroactively hypothesizing what it might have been. *Marcrum*, 509 F.3d at 502. Like the trial attorney's failure to present mitigating evidence in *Wiggins v. Smith*, "the 'strategic decision' [the Government] invoke[d] to justify counsel's limited pursuit of mitigating evidence resembles more a post hoc rationalization of counsel's conduct than an accurate description of their deliberations prior to sentencing." 539 U.S. 510, 526 (2003).

Nor would such a leniency strategy have been reasonable when the "lenient" sentence that the government sought, 144 months, was only below the Guidelines range because the enhancement was applied. A sentence of 144 months is more than twice the 71-month maximum Guideline sentence absent the enhancement. Doc. No. 55 (finding the

base offense level without the sentencing enhancement to be 21). Evidence indicating that Mr. Lee was *not* responsible for the decedent's tragic demise would not be damaging to Mr. Lee, even when coupled with tragic evidence about the decedent and his demise. The evidence would have been presented to a judge, not a jury that could potentially be prejudiced by the tragedy of the decedent's circumstances.

The Government invokes case law regarding an attorney's authority to make strategic decisions for a client, such as raising evidentiary objections. Doc. 126 at 11-12. That case law bears on a wholly distinct and irrelevant question: in what contexts can an attorney's waiver bind a defendant. *E.g.*, *Id*. at 11, citing *New York v. Hill*, 528 U.S. 110 (2000). *Hill* held that defense counsel has the right to waive a speedy trial on the defendant's behalf without their knowledge. *Id*.  But *having the authority* to make a strategic decision or to effectuate a waiver does not immunize a trial attorney against subsequent claims of ineffectiveness for having done so. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (noting that "an ineffective-assistance claim can function as a way to escape rules of waiver.").

In *Marcrum*, the Eighth Circuit found the first prong of the *Strickland* test to be met where trial counsel failed to introduce medical records at trial because of neglect, not because of reasonable trial strategy. 509 F.3d. at 505 (ultimately denying the habeas petition because the medical records would not have been reasonably likely to change the jury's mind). Like the trial attorney in *Marcrum*, Mr. Rivers inherited the exculpatory evidence from an appointed counsel, and simply failed to introduce it. Unlike *Marcrum*,

however, the omitted evidence would have made a world of difference to Mr. Lee's sentence.

### B. Failing to contest the sentence enhancement was prejudicial to Mr. Lee.

Mr. Lee must demonstrate the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "sufficient to undermine confidence in the outcome." *Id*.

In *Love v. United States*, the Eighth Circuit denied a § 2255 petition based on a finding that the trial attorney's conduct was reasonable in delaying plea negotiations because of concerns with his client's competency, but did find the second prong of the *Strickland* test satisfied. In *Love*, it was prejudicial for the trial counsel to allow the prosecution's plea offer with a recommended 120-month imprisonment term to expire, causing it to become unavailable to the defendant, who was ultimately sentenced to 144 months. As with Mr. Lee, the sentence the defendant ultimately received in *Love* was below the calculated guideline range. *Id*.

But for the enhancement, the Guideline range for Mr. Lee would have been up to 71 months. There is no evidence on the record here that the trial judge would have seen fit to go outside the guideline range. Indeed, the Government noted in its sentencing memorandum, when asking for a downward variance from the Guidelines, that "this is an extraordinary case" due to the context of Mr. Lee's offense being as part of nationwide protests against racism and not for personal gain. Doc. 67 at 7. It was clear from the Government's sentencing memorandum that the request for 144 months, and not for a

6

lower sentence, was entirely because of the Government's position that Mr. Lee's conduct caused death: "had circumstances been just a little different, [O.L.S.] would be alive today, and Mr. Lee would face significantly less criminal liability (a Guideline range of 60 months, approximately 15 years less than the PSR's calculation)--the cruel caprices of fate." *Id*. at 12. It is beyond unlikely that a judge willing to vary downward so significantly from a sentence enhanced as a result of death, would instead impose an upward variance if that enhancement were proven not to apply.

There is–at a minimum–a reasonable probability that, without the sentence enhancement, Mr. Lee would be serving less than 71 months, as opposed to 120 months.

## II.    Mr. Lee expressed sincere remorse at the impacts of his actions at sentencing, but did not take legal responsibility for the decedent's life.

The government points to Mr. Lee's lack of verbal interjection during his sentencing hearing to register surprise at the withdrawal of the objection to the enhancement, as well as his subsequent apology to O.L.S.'s family, as proof that Mr. Lee was aware and intending for his attorney to withdraw the objection to the sentence enhancement.

There is neither evidence nor a proffer on the record of how Mr. Lee visually appeared during sentencing, or whether it would have been possible for him from the facility he was at to contact his counsel directly mid-hearing without interrupting the proceeding, The record contains only the transcript showing that Mr. Lee did not interrupt during the hearing. We also have a proffer, stating that he called both his attorney and his support person Corrine Cochrane immediately after sentencing, expressing his surprise

that Mr. Rivers changed course and did not challenge the application of U.S.S.G. § 2A1.2. Doc. 102, 3-4.

This proffer also describes how Mr. Rivers' had a pattern of poor communication with his client. *Id*. Mr. Rivers himself admitted to an overwhelming workload, which caused him to miss a deadline by over two weeks. Doc. 77. At a bare minimum, we have two conflicting narratives: one, that Mr. Lee knew all along and in fact asked for the stipulation to be withdrawn, and the other that Mr. Lee had no idea until partway through his sentencing that the enhancement was conceded. Given the gravity of the situation and his freedom on the line, it could easily be imagined that Mr. Lee was too surprised to know how to respond during the hearing, perhaps why he called his attorney and his support person immediately after the hearing concluded to figure out what was going on.

Mr. Lee's sentencing allocation and remorse for arson is not a confession to homicide. Mr. Lee expressed condolences for the decedent and his family because he cares deeply about the suffering of other people, and recognizes that his life was not the only one forever changed that night. Mr. Lee apologized to the decedent's family, wondering if the arson obscured whatever violence or tragedy befell the decedent that same night, leading the decedent not to be found until much later. Being sympathetic to a family's suffering and acknowledging the unknowns surrounding how exactly their family member died, does not amount to taking legal responsibility for that person's death.

Should these allegations create an open and dispositive factual question for the Court, the proper remedy would be an evidentiary hearing. The factual dispute is Mr.

Lee's word against Mr. Rivers', and Mr. Lee and Mr. Rivers could both be called to testify and be questioned about their conflicting representations.

**CONCLUSION**

Mr. Lee's appointed counsel all but handed Mr. Rivers a defense on a silver platter: a forensic report stating that the cause of death could not be determined with any medical certainty, as well as a timeline of the whereabouts of the decedent with multiple corroborating forms of evidence placing him far away from the scene of the arson half an hour after the fire was lit, indicating that he was using his cell phone several hours after the building had been engulfed in flames, and showing that the decedent's car did not appear outside the already burning building until much later in the night. This veritable mountain of evidence disproves the Government's theory that the arson caused death. Mr. Rivers had this evidence at his fingertips, but chose not to present it, and obtained no negotiated benefit from the government in return, a decision no reasonable attorney would make, which subjected Mr. Lee to a much longer sentence than he would be facing without the inefficacy.

Dated: March 22, 2026                    Respectfully submitted,

*s/Kira Aakre Kelley*
KIRA A. KELLEY
MN Bar No. 0402932
P.O. BOX 7040
Minneapolis, MN 55407
(802) 683-4086
kira@climatedefenseproject.org

*Attorney for Montez Lee*

9